Balam O. Letona, Esq. (Cal. Bar No. 229642)
Law Office of Balam O. Letona, Inc.
1509 Seabright Avenue, Ste. C1
Santa Cruz, CA 95062
Telephone: (831) 421-0200
Facsimile:  (831) 421-0400
balam@letonalaw.com

Attorney for Plaintiff:
Robert V. Ross and Laurie Platero-Ross

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT V. ROSS AND LAURIE PLATERO-ROSS, <br><br> Plaintiff, <br><br> vs. <br><br> BANK OF AMERICA N.A., EQUIFAX INFORMATION SERVICES LLC, TRANSUNION CORP., CREDIT PLUS, INC., and DOES 1-10. <br><br><br> Defendants. | **Case No.** <br><br> **COMPLAINT FOR DAMAGES** <br><br> JURY TRIAL DEMANDED |

## I. INTRODUCTION

1.   On December 12, 2012, the United States Bankruptcy Court granted a Chapter 13 discharge to Plaintiffs' Robert V. Ross and Laurie Platero-Ross. On that day Plaintiffs discharged several mortgages serviced by defendant Bank of America N.A. ("BA"). However, after the discharge BA furnished false, inaccurate and damaging credit information to credit reporting agencies, including Equifax Information Services, LLC. ("Equifax"), Transunion Corporation ("Transunion"), and Experian Information Solutions, Inc. ("Experian") known collectively as the ("credit reporting agencies or CRA's"), about Plaintiffs. After the discharge BA reported among other things that

Plaintiffs were 120 days delinquent, owing over $10,000 and omitting that the mortgages were discharged in bankruptcy. All of this was reported as post-discharge activity. Plaintiffs disputed the information with the CRA's and BA and the tradelines were corrected, however, almost two years later some of the false and inaccurate information reappeared on Plaintiffs credit reports.

2.   The false, derogatory, incomplete and inaccurate information mentioned herein negatively reflects upon Plaintiffs' credit repayment history, their reputation, their financial responsibility and their credit worthiness.

3.   As a result of Defendants unlawful acts and omissions, Plaintiffs have suffered emotional distress and injury including, anxiety, stress, marital instability, loss of concentration, sleeplessness, depression, fear, embarrassment, crying fits, fear of applying for credit, credit turn downs, damage to credit reputation, pain and mailing expenses amongst other negative emotions and damages.

## II. FACTS

4.   In April 23, 2009, Plaintiffs experienced financial difficulty and filed Chapter 13 bankruptcy. Included in their bankruptcy were mortgages serviced by BA[1]. On October 16, 2009, the bankruptcy court approved their Chapter 13 plan. Under the plan the Plaintiffs rejected each BA mortgage and surrendered all interest in the property securing each mortgage. A true and correct copy of the Chapter 13 plan is attached as **Exhibit A**. It filed only one proof of claim with the bankruptcy court – a sold out junior with an alleged balance of over $25,000 and last four account digits of #4155. A true and correct copy of the proof of claim is attached as **Exhibit B**. That claim was treated in the plan as an

---

[1] The loans were originated and serviced by Countrywide Financial Corp. BA acquired Countrywide in 2008.

**COMPLAINT FOR DAMAGES**

1  unsecured creditor. At the conclusion of the bankruptcy Plaintiffs paid over $77,000 to

2  unsecured creditors. Since 2013, the credit reporting agencies identified herein have

3  known or should have known that Plaintiffs filed Chapter 13 bankruptcy in April 2009

4  and received a discharge in December 2012.

5  **BA Reports False & Inaccurate Information to the CRA's**

6      5.  Sometime after the December 12, 2012, bankruptcy discharge BA began to

7  furnish false and inaccurate information to the CRA's despite knowing that Plaintiffs

8  owed it nothing.

9      6.  In November and December 2013 and January 2014, Plaintiffs obtained a copy

10  of their credit reports from the CRA' showing BA reporting Plaintiffs as 120 days

11  delinquent, owing over $10,000 and omitting that the mortgages were discharged in

12  bankruptcy.

13  **2014 Disputes With BA and the CRA's**

14      7.  In early 2014, Plaintiffs sent written notice to the CRA's and BA notifying

15  them that they disputed the BA mortgage tradelines, that the accounts were included and

16  discharged in bankruptcy. Plaintiffs demanded a correction. In addition, Plaintiffs

17  forwarded to each entity a copy of the discharge order, the Chapter 13 plan and other

18  bankruptcy schedules. On information and belief, Equifax and Experian notified BA of

19  Plaintiffs' 2014 disputes with respect to the BA tradelines as required by the Fair Credit

20  Reporting Act, 15 U.S.C.A. § 1681i(a)(2).

21      8.  In response to the 2014 disputes Equifax and Experian reinvestigated all of the

22  BA tradelines and at the conclusion of their reinvestigation reported the BA tradelines as

23  either included or discharged in bankruptcy and with no post discharge delinquencies or

24  balances owed. Transunion deleted all of the BA tradelines from Plaintiffs credit report. It

25  is unclear whether Transunion ever notified BA of Plaintiffs' dispute as required by Fair

26  Credit Reporting Act, 15 U.S.C.A. § 1681i(a)(2).

27

28  **COMPLAINT FOR DAMAGES**

9.   BA responded by letter dated February 10, 2014, wherein it stated with respect to BA mortgage #4155 it would report to the CRA's that the mortgage was discharged in bankruptcy and report it with a zero balance. A true and correct copy is attached as **Exhibit C**.

**2015 BA Reports #4155 Mortgage with Balance Owed**

10.  On November 25, 2015, Plaintiffs sought to qualify for a loan to purchase a home. On that day their mortgage broker obtained a copy of a tri-merge credit report from Credit Plus, Inc., ("Credit Plus"). Credit Plus is a credit reporting agency and it knew prior to November 2015, that Plaintiffs had filed Chapter 13 bankruptcy in April 2009 and received a discharge in December 2012. Credit Plus assembles and merges data from other consumer reporting agencies. The Credit Plus tri-merge report regarding Plaintiffs contained credit reporting information from Equifax, Experian and Transunion. The tri-merge reported the BA mortgage tradeline #4155 with a current balance over $27,000, reported the account as a "write off" and the tradeline made no mention that the mortgage had been discharged in bankruptcy. The BA account was identified as a home equity line opened in June 2007 and a date of last activity as October 2011. The tri-merge identified the source of the information as Transunion and Equifax.  The Plaintiffs understood that they could not pursue a loan at this time because of this false, inaccurate and damaging information.

11.  Later in December 2015, Plaintiffs obtained copies of their credit reports from Equifax, Experian and Transunion. Plaintiffs discovered that Equifax reported BA mortgage #4155 with a current balance and past due amount of over $27,000, 'charge-off' of over $25,000 reported from 08/2013 to 10/2015, no mention of a bankruptcy or discharge and the account was not reported as disputed. Plaintiff Platero-Ross's Transunion credit report contained the same information. All of this is false, incomplete and inaccurate. Plaintiffs could not continue to be past due, owe a balance, have

4

**COMPLAINT FOR DAMAGES**

1    continuing delinquencies/charge-offs or still have open BA mortgages, because the BA

2    mortgage was discharged and Plaintiffs owed BA nothing. In fact, by BA's own February

3    10, 2014, admission the BA mortgage #4155 was discharged in bankruptcy "with zero

4    balance due." See **Exhibit C**. Additionally, both Equifax and Transunion were required

5    by law to prevent reappearance of the inaccurate and false information in the Plaintiffs'

6    consumer reports and notify Plaintiffs if the information reappeared.

7        12. In January 2016, Plaintiffs sent written notice to Equifax, Transunion and

8    Credit Plus that they disputed the BA mortgage tradelines. Plaintiffs also caused a dispute

9    to be sent directly to BA. Plaintiffs demanded the information be corrected. In addition,

10   Plaintiffs forwarded a copy of the discharge order, the Chapter 13 plan and other

11   bankruptcy schedules. On information and belief, Equifax notified BA of Plaintiffs' 2014

12   disputes with respect to the BA tradelines as required by the Fair Credit Reporting Act, 15

13   U.S.C.A. § 1681i(a)(2).

14       13. In response to the 2016 dispute Equifax reinvestigated the BA mortgage #4155

15   and at the conclusion of their reinvestigation reported the BA mortgage as either included

16   or discharged in bankruptcy and with no post discharge delinquencies or balances owed.

17   While Transunion deleted the BA mortgage #4155 from Plaintiff Platero-Ross' credit

18   report. It is unclear whether Transunion ever notified BA of Plaintiff's Platero Ross'

19   dispute as required by the Fair Credit Reporting Act, 15 U.S.C.A. § 1681i(a)(2). Plaintiffs

20   received and heard nothing from Credit Plus with respect to their dispute.

21       14. Both Equifax, Transunion and BA failed to conduct reasonable investigations

22   into all of Plaintiffs' disputes and maintain reasonable procedures designed to prevent the

23   reappearance of the inaccurate and false information, beginning with their 2014 disputes

24   to the present. Equifax, Transunion and Credit Plus failed to comply and follow

25   reasonable procedures to assure maximum possible accuracy. Additionally, BA furnished

26   incomplete and inaccurate information about Plaintiffs that it knew or should have known

27                                                5

28   **COMPLAINT FOR DAMAGES**

was incomplete or inaccurate.

15. The false, derogatory, incomplete and inaccurate information mentioned herein negatively reflects upon Plaintiffs' credit repayment history, their reputation, their financial responsibility and their credit worthiness.

16. As a result of Defendants unlawful acts and omissions, Plaintiffs have suffered emotional distress and injury including, anxiety, stress, marital instability, loss of concentration, sleeplessness, depression, fear, embarrassment, crying fits, fear of applying for credit, credit turn downs, damage to credit reputation, pain and mailing expenses amongst other negative emotions and damages.

### III. JURISDICTION AND PARTIES

17. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Venue is also proper pursuant to 15 U.S.C. § 1681.

18. Robert Ross and Laurie Platero-Ross ("Plaintiffs") are husband and wife who reside in Santa Cruz County.

19. Defendant Bank of America NA is a mortgage servicer, ("BA or Defendant") and a corporation. A significant portion of BA's business operations are dedicated to servicing and collecting on mortgages. BA is an entity that is governed and restricted by the FCRA, and is regularly engaged in the business of assembling, evaluating, publishing and dispersing information concerning consumers credit to others.

20. Defendant Equifax Information Services, LLC., ("Equifax or Defendant") is a limited liability company that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

21. Defendant Transunion Corp., ("TU or Defendant") is a corporation that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

**COMPLAINT FOR DAMAGES**

22. Defendant Credit Plus, Inc.,  ("Credit Plus or Defendant") is a Maryland corporation which was doing business at all times in Santa Cruz County. Credit Plus is a "consumer reporting agency" as that term is defined by 15 USC § 1681a(f) and a "reseller" as defined by 15 USC § 1681(a)u.

23. Defendants Does 1 through 10 are persons or entities whose true names and capacities are presently unknown to plaintiffs, and who therefore are sued by such fictitious names. Plaintiffs are informed and believes and thereon alleges that each of the fictitiously named defendants perpetrated some or all of the wrongful acts alleged herein, is responsible in some manner for the matters alleged herein, and is jointly and severally liable to Plaintiffs. Plaintiffs will seek leave of court to amend this complaint to state the true names and capacities of such fictitiously named defendants when ascertained.

24. At all relevant times, the conduct of each defendant named above, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, in conscious disregard for the rights of others, and in grossly negligent disregard for federal and state laws and the rights of Plaintiffs.

25. At all times mentioned herein, each defendant and employee of defendant named above was the agent or employee of each of the other defendants and was acting within the course and scope of such agency or employment and under direct supervision and control of each defendant. The defendants are jointly and severally liable to Plaintiffs. Defendant approved, authorized and/or ratified the wrongful acts and omissions herein.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 15 U.S.C. §1681s-2(b)
### BA Only

26. Plaintiffs repeat the foregoing paragraphs as if fully reinstated herein.

27. Plaintiffs are "consumers" as defined by 15 U.S.C. §1681a. And, defendant BA

7

**COMPLAINT FOR DAMAGES**

1  are "persons" as defined by 15 U.S.C. § 1681a(b).

2      28.  BA is a furnisher as that term is defined by the Fair Credit Reporting Act and

3  Civil Code §1785.25(a).

4      29.  Within the last two years, BA furnished false, inaccurate and incomplete

5  information to the credit reporting agencies.

6      30.  Defendant BA violated 15 U.S.C. §1681n and §1681o by engaging in the

7  following conduct that violates 15 U.S.C. §1681s-2(b):

8      31.  Defendant willfully and negligently failed to conduct an investigation of the

9  false and inaccurate information that Plaintiffs disputed;

10     32.  Defendant willfully and negligently failed to review all relevant information

11  concerning Plaintiffs accounts;

12     33.  Defendant willfully and negligently failed to report the results of investigations

13  to all of the credit reporting agencies;

14     34.  Defendant willfully and negligently failed to report the inaccurate and false

15  status of the information to the credit reporting agencies;

16     35.  Defendant willfully and negligently failed to properly participate, investigate

17  and comply with the reinvestigations that were conducted by the credit reporting agencies

18  concerning the false and inaccurate information disputed by Plaintiffs;

19     36.  Defendant willfully and negligently failed to provide the credit reporting

20  agencies with the factual information and evidence Plaintiffs submitted to defendants that

21  proved that the information concerning Plaintiffs' credit reports was false and inaccurate;

22     37.  Defendant willfully and negligently continued to furnish and disseminate

23  inaccurate and derogatory credit, account and other information concerning Plaintiffs'

24  account to the credit reporting agencies;

25     38.  Defendant willfully and negligently failed to modify, delete or permanently

26  block the item of disputed information from being reported; and

27                                    8

28              **COMPLAINT FOR DAMAGES**

39. Defendant willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b).

40.     As a result Plaintiffs have been damages and seek actual, statutory and punitive damages for BA's negligent and willful violations of the FCRA pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1691o.

**SECOND CLAIM FOR RELIEF**
**Civ. Code §1785.25(a)**
**BA Only**

41. Plaintiffs repeat the foregoing paragraphs as if fully reinstated herein.

42. BA negligently and willfully furnished information to the credit reporting agencies with respect to plaintiffs it knew or should have known was inaccurate, misleading and incomplete.

43. BA failed to conduct a reasonable investigation as to whether its credit reporting with respect to plaintiffs was accurate, misleading or incomplete.

44. Plaintiffs are entitled to actual damages, attorneys' fees, costs, punitive damages and injunctive relief, pursuant to Cal. Civ. Code §1785.31, as a result of BA's willful and malicious conduct.

**THIRD CLAIM FOR RELIEF**
**15.U.S.C. §1681i**
**(Equifax Only)**

45. Plaintiffs repeat the foregoing paragraphs as if fully reinstated herein.

46. Within the two years preceding the filing of this complaint, Plaintiffs notified Equifax of inaccuracies contained in their reports and they asked Equifax to correct those inaccuracies.

47. Equifax failed to conduct a reasonable reinvestigation of the inaccuracies that Plaintiffs disputed. Equifax failed to review and consider all relevant information submitted by Plaintiffs. Equifax failed to provide timely and complete notification to the

9

furnisher of the disputed information. Equifax failed to promptly delete or modify the information, record the current status of the information and notify the furnisher of the results of its investigation.

48. Equifax allowed the disputed information to be reinserted in violation of 15 U.S.C. §1681i.

49. Equifax failed to maintain reasonable procedures designed to prevent the reappearance of the disputed information that was deleted.

50. As such, Equifax negligently and willfully violated 15 U.S.C. §1681i.

51. As a result, Plaintiff has been damaged and seek actual, statutory and punitive damages for Equifax's negligent and willful violations of the FCRA pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1691o.

## FOURTH CLAIM FOR RELIEF
### 15.U.S.C. §1681e
### (Equifax Only)

52. Plaintiffs repeats the foregoing paragraphs as if fully reinstated herein.

53. Within the two years preceding the filing of this complaint, Plaintiffs notified Equifax of inaccuracies contained in their reports and they asked Equifax to correct those inaccuracies.

54. Equifax failed to comply and follow reasonable procedures to assure maximum possible accuracy of Plaintiffs credit reports, information and file and in violation of 15 U.S.C. §1681e(b). That violation was negligent and willful.

55. As a result, Plaintiffs have been damaged and seek actual, statutory and punitive damages for Equifax's negligent and willful violations of the FCRA pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1691o.

//
//

10

**COMPLAINT FOR DAMAGES**

1

2

## FIFTH CLAIM FOR RELIEF
### 15.U.S.C. §1681i
### (Transunion Only)

3

4

56. Plaintiffs repeat the foregoing paragraphs as if fully reinstated herein.

57. Within the two years preceding the filing of this complaint, Plaintiffs notified

5

6

Transunion of inaccuracies contained in their reports and they asked Transunion to correct

those inaccuracies.

7

8

58. Transunion failed to conduct a reasonable reinvestigation of the inaccuracies

that Plaintiffs disputed. Transunion failed to review and consider all relevant information

9

10

submitted by Plaintiffs. Transunion failed to provide timely and complete notification to

the furnisher of the disputed information. Transunion failed to promptly delete or modify

11

12

the information, record the current status of the information and notify the furnisher of the

results of its investigation.

13

14

59. Transunion allowed the disputed information to be reinserted in violation of 15

U.S.C. §1681i and failed to notify Plaintiffs that the information had been reinserted.

15

16

60. Transunion failed to maintain reasonable procedures designed to prevent the

reappearance of the disputed information that was deleted.

17

18

61. As such, Transunion negligently and willfully violated 15 U.S.C. §1681i.

62. As a result, Plaintiff has been damaged and seek actual, statutory and punitive

19

20

damages for Transunion negligent and willful violations of the FCRA pursuant to 15

U.S.C. §1681n and 15 U.S.C. §1691o.

21

22

## SIXTH CLAIM FOR RELIEF
### 15.U.S.C. §1681e
### (Transunion Only)

23

24

63. Plaintiffs repeats the foregoing paragraphs as if fully reinstated herein.

25

64. Within the two years preceding the filing of this complaint, Plaintiffs notified

26

Transunion of inaccuracies contained in their reports and they asked Transunion to correct

27

11

28

**COMPLAINT FOR DAMAGES**

those inaccuracies.

65. Transunion failed to comply and follow reasonable procedures to assure maximum possible accuracy of Plaintiffs credit reports, information and file and in violation of 15 U.S.C. §1681e(b). That violation was negligent and willful.

66. As a result, Plaintiffs have been damaged and seek actual, statutory and punitive damages for Transunion's negligent and willful violations of the FCRA pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1691o.

## SEVENTH CLAIM FOR RELIEF
### 15 U.S.C. §1681e
#### (Credit Plus)

67. Plaintiffs repeats the foregoing paragraphs as if fully reinstated herein.

68. Credit Plus failed to comply and follow reasonable procedures to assure maximum possible accuracy of Plaintiffs credit reports, information and file and in violation of 15 U.S.C. §1681e(b). That violation was negligent and willful.

69. As a result, Plaintiffs have been damaged and seek actual, statutory and punitive damages for Credit Plus's negligent and willful violations of the FCRA pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1691o.

## EIGHTH CLAIM FOR RELIEF
### 15 U.S.C. §1681i(f)
#### (Credit Plus)

70. Plaintiffs repeats the foregoing paragraphs as if fully reinstated herein.

71. Credit Plus negligently and willfully failed to comply with its obligations regarding Plaintiffs as required by 15 USC §1681i(f).

72. Credit Plus failed to determine whether the false information on Plaintiffs credit report was incomplete or inaccurate as a result of an act or omission by Credit Plus and failed to correct or delete the information as required.

73. Credit Plus failed to convey Plaintiffs notice of dispute and all relevant

12

information to each consumer reporting agency that provided Credit Plus with the disputed information.

74. If Credit Plus did convey Plaintiffs notice of dispute to the relevant consumer reporting agency then Credit Plus failed to convey the results of the CRA's reinvestigation to the Plaintiffs.

75. As a result, Plaintiffs have been damaged and seek actual, statutory and punitive damages for Credit Plus's negligent and willful violations of the FCRA pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1691o.

**NINTH CLAIM FOR RELIEF**
**Cal. Bus. & Prof. Code §17200**
**All Defendants**

76. Plaintiffs repeats the foregoing paragraphs as if fully reinstated herein.

77. Defendants unlawful business acts and/or practices as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore per se violations of Bus. and Prof. Code § 17200 et seq. Business and Professions Code 17200-17205 prohibits business acts and practices that are unlawful, unfair and deceptive.

78. Defendants acts and practices alleged above constitute unlawful, unfair and deceptive business practices.

79. Plaintiffs are entitled to injunctive relief against Defendants for its unlawful, unfair, and deceptive acts and practices as provided by Bus. & Prof. Code 17203.

80. Defendants unlawful, unfair and deceptive business practices present a continuing threat in that Defendants are currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by this Court. As such, pursuant to Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendants from engaging in the acts and business practices as described above. On information and belief, Defendants have engaged in the same conduct with respect to

13

**COMPLAINT FOR DAMAGES**

other similarly situated individuals.

81. Plaintiffs have suffered injury in fact and have lost money or property as the result of the unlawful, unfair competition and business practice. Plaintiffs suffered an invasion or injury to a legally protected interest, and had incurred out of pocket loss and other losses.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. For statutory, actual and punitive damages, pursuant to 15 U.S.C § 1681n, §1681o.

2. For statutory, actual and punitive damages pursuant to Civ. Code §1785.31, as well as injunctive relief;

3. For an award of attorneys' fees, costs and expenses incurred in the investigation, filing and prosecution of this action pursuant to the Civ. Code §1785.31 and 15 U.S.C § 1681n, §1681o;

4. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Date: November 20, 2017

_/s/ Balam O. Letona_
Balam O. Letona, Esq.
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiffs Robert Ross and Laurie Platero-Ross hereby demand a trial by jury of all triable issues of fact in the above-captioned case.

_/s/ Balam O. Letona_
Balam O. Letona, Esq.
Attorney for Plaintiff

14

**COMPLAINT FOR DAMAGES**

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

In re:                                          Case No. 09-53044 RLE
                                                FIRST AMENDED
Robert & Laurie Ross                            CHAPTER 13 PLAN
_____/
              Debtor(s)

1.  The future earnings of the Debtor(s) are submitted to the supervision and control of the Trustee, and the Debtor(s) will pay to the
    Trustee the sum of $ $1,100 each month except April (starting 2010) where the Debtors spouse will pay a
    lump sum of $10,860 (annual bonus)                          each month.   Initial attorneys fees are requested in the
    amount of $ 4,550.00        .
    ___ Debtor(s) elect a voluntary wage order

2.  From the payments received, the Trustee will make disbursements as follows:
    (a)  On allowed claims for expenses of administration required by 11 U.S.C. § 507(a)(2) in deferred payments.
    (b)  On allowed secured claims, which shall be treated and valued as follows:

    |  | Value of | Estimated Mortgage/ | Adequate Protection | Interest Rate |
    | Name | Collateral | Lease Arrears | Payments (If specified) | (If specified) |

    [The valuations shown above will be binding unless a timely objection to confirmation is filed. Secured claims will be allowed for the
    value of the collateral or the amount of the claim, whichever is less, and will be paid the adequate protection payments and the interest
    rates shown above. If an interest rate is not specified, 7% per annum will be paid. The remainder of the amount owing, if any, will be
    allowed as a general unsecured claim paid under the provisions of ¶ 2(d).]

    (c)  On allowed priority unsecured claims in the order prescribed by 11 U.S.C. § 507.
    (d)  On allowed general unsecured claims as follows:
        X  at a rate of ____23____ cents on the dollar. The estimated term of the plan is __60__ months. (Percentage Plan)
        ___ the sum of _____ payable over _____ months, distributed pro rata, in amounts determined after allowed
            administrative, secured and priority unsecured claims are paid. The plan payments will continue at the highest
            monthly payment provided in ¶ 1 as necessary to pay all allowed administrative, secured and priority unsecured
            claims within sixty months of confirmation. (Pot Plan)

3.  The debtor(s) elect to reject the following executory contracts of leases and surrender to the named creditor(s) the personal or
    real property that serves as collateral for a claim. The debtor(s) waive the protections of the automatic stay and consent to allow
    the named creditor(s) to obtain possession and dispose of the following identified property or collateral without further order of
    the court. Any allowed unsecured claim for damages resulting from the rejection will be paid under paragraph 2(d).
    Sunset Cove of Watsonville HOA; Countrywide (all accounts); National City; Siskiyou County Tax
4.  The Debtor(s) will pay directly the following fully secured creditors and lessors or creditors holding long-term debt: Collector
    Name                 Monthly Payment         Name                     Monthly Payment

5.  The date this case was filed will be the effective date of the plan as well as the date when interest ceases accruing on unsecured
    claims against the estate.

6.  The Debtor(s) elect to have property of the estate:
    X  revest in the debtor(s) at such time as a discharge is granted or the case is dismissed.
    ___ revest in the debtor(s) upon plan confirmation. Once property revests, the Debtor(s) may sell or refinance real or personal
        property without further order of the court, upon approval of the Chapter 13 Trustee. 60 months from the date of
7.  Additional Provisions: The plan shall complete within 60 months from the date of confirmation

    Dated: 08/11/2009        /s/ Robert Vernon Ross              /s/ Laurie Marie Platero-Ross
                             Debtor                              Debtor

I, the undersigned, am the attorney for the above-named debtor(s) and hereby certify that the foregoing chapter 13 plan is a verbatim
replica of pre-approved chapter 13 plan promulgated pursuant to B.L.R. 1007-1 for use in the San Jose Division.

    Dated: 8/11/2009         /s/ Brian M. Kandel, Esq.
                             Attorney for Debtor(s)

Rev. 04/06 (This certification must be signed for any Model Chapter 13 Plan generated by WordPerfect, Word, or other word processing program.)

## *Notice to Creditors Regarding Plan Provisions*

**Binding Effect of the Plan**: The plan will be binding upon creditors if approved at a confirmation hearing. You should review the plan carefully as your legal rights may be affected. You may wish to seek legal advice to understand its terms and to protect your rights.

**Written Objection to Confirmation**: If you disagree with the terms of this plan, you must file a written objection with the U.S. Bankruptcy Court by the date of the Meeting of Creditors and serve it upon the trustee and debtor's attorney or, if not represented by an attorney, the debtor. If you fail to file a timely written objection to confirmation of this plan and the plan is confirmed by the court, you will be bound by its terms.

**Plan Payment**: The debtor must make the first payment proposed by the plan within 30 days after the plan is filed or the order for relief is entered, whichever is earlier, or the case may be dismissed without further notice.

**Proof of Claim**: To receive payments, you must file a proof of claim. You may file the proof of claim electronically if you are a registered participant for electronic filing. If not, a blank claim form is enclosed for your use. The form must be fully executed, legible and you must attach any required documentation. It must be filed with the court and served upon the debtor's attorney or, if not represented by an attorney, the debtor.

**Distribution of Funds**: Payments will be disbursed by the chapter 13 trustee consistent with 11 U.S.C. § 1326(b)(1) and according to the plan. Creditors secured by personal property will receive adequate protection payments as shown on the anticipated distribution of funds, attached as Exhibit 1, contemporaneous with other administrative claims. Non-administrative priority and unsecured claims under 11 U.S.C. § 507 will be made in their order of priority, except that allowed claims under § 507(a)(1)(B) which are listed in section 2(c) of the plan will be paid after other priority claims. Payments must be credited in accordance with the terms of the plan and § 524(i).

**Treatment of Secured Claims**: The valuations shown will be binding unless a timely objection to confirmation is filed. Secured claims will be allowed for the value of the collateral or the amount of the claim, whichever is less. The remaining balance of any partially-secured claim will be treated as a general unsecured claim. If the time value of money (interest rate) is not specified, it will be paid at an annual rate of seven percent (7%).

**Adequate Protection Payments**: Subject to the trustee's monthly disbursement cycle, the trustee will disburse adequate protection payments commencing within 30 days after a proof of claim is properly filed, documenting the nature and extent of a claimed lien. Adequate protection payments may be no less than the monthly depreciation of the collateral.

**Proposed Compromise**: If the debtor has proposed a compromise affecting your collateral, you may either accept, reject or renegotiate the proposed compromise. If you reach an agreement, the resulting claim will be treated as a secured claim under § 506 and the plan may be confirmed. If you do not affirmatively agree, you must file an objection to confirmation (see above), and the confirmation hearing will be continued for consideration of a modified plan.

(Rev. 11/15/06)

## *Order Establishing Procedures for Objection to Confirmation*

***Hearing Date, Time and Place:*** *If an objection to confirmation is filed, a PREHEARING CONFERENCE will be held at the date and time announced at the initial confirmation hearing. Parties may confirm the date by checking the minute order on the court's docket, which indicates "Hearing Continued" in reference to the confirmation hearing. Individuals not represented by counsel may also contact the trustee to learn the continued date.*

***Procedures for Early Resolution:*** *As soon as the objection is resolved, counsel for the debtor is to prepare and forward to the trustee a statement of resolution, which the trustee will set on the court's earliest available calendar.*

***Procedures for Prehearing Conference:*** *Each party objecting to confirmation and counsel for the debtor are ordered to confer regarding resolution of the objection. Debtor's counsel, or the debtor if unrepresented, must contact the objecting party within ten days of receipt of the objection in a good faith effort to resolve the objection. At least 14 calendar days prior to the prehearing conference and each continued hearing, counsel for the debtor must file and serve a prehearing statement with the court indicating:*

*a. The date the objection was filed, the date of the initial conference between counsel to resolve the objection and the dates of all subsequent contacts regarding resolution of the objection;*
*b. A precise and separate statement of each factual and legal issue that must be determined to resolve the objection;*
*c. Proposed discovery and/or briefing schedules and proposals for alternative dispute resolution;*
*d. For continued hearings, developments since the last hearing and the current status.*

***Procedures for Objections to Proposed Compromises:*** *If a secured creditor affirmatively assents to the proposed compromise or an alternative compromise at or prior to the time of the initial confirmation hearing and no further objections are pending, the plan will be confirmed. If the parties cannot reach a compromise at or prior to that hearing, the court will deny confirmation and will continue the hearing for consideration of a modified plan. If a secured creditor does not affirmatively state its position regarding its collateral at or before the confirmation hearing, the court will continue the hearing for approximately 30 days to allow the debtor additional time to obtain a response.*

***Sanctions:*** *Failure of a party to comply timely with this order may result in the exclusion of evidence, the imposition of monetary or non-monetary sanctions, possible dismissal of the case, or striking of the objection to confirmation.*

**IT IS SO ORDERED:**

/s/ Marilyn Morgan
UNITED STATES BANKRUPTCY JUDGE

/s/ Arthur S. Weissbrodt
UNITED STATES BANKRUPTCY JUDGE

/s/ Roger L. Efremsky
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

| United States Bankruptcy Court Northern District of California | Proof of Claim |
|---|---|

| | |
|---|---|
| In re (Name of Debtor):<br>Robert Vernon Ross and Laurie Marie Platero-Ross | Case Number:<br>09-53044-RLE |

| | |
|---|---|
| NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.<br><br>Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>BAC HOME LOANS SERVICING, L.P. FKA COUNTRYWIDE HOME LOANS SERVICING, L.P. ITS SUCCESSORS AND/OR ASSIGNS | □ Check this box to indicate that this claim amends a previously filed claim.<br><br>Court Claim Number: _____<br>(if known)<br>Filed on: _____ |

| | |
|---|---|
| Name and Address Where Notices Should be Sent:<br>BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P.<br>Bankruptcy Department<br>7105 Corporate Drive<br>Mail Stop PTX-C-35<br>Plano, TX 75024<br>(805) 520 5100 | □ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>□ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| Name and Address Where Payment Should be Sent (if different from above):<br>BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P.<br>Bankruptcy Department<br>Payment Processing PTX-B-209<br>7105 Corporate Drive<br>Plano, TX 75024-1319<br>(805) 520 5100 | 5. Amount of claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br>Specify the priority of the claim. |

| | |
|---|---|
| 1. Amount of Claim at Time Case Filed: $ $ 25,751.89*<br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br>If all or part of your claim is entitled to priority, complete item 5.<br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.<br>* This is an estimated figure and is not to be relied upon as a payoff statement. | □ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>□ Wages, salaries, or commissions (up to $10,950*), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier--11 U.S.C. § 507(a)(4). |
| 2. Basis for Claim: __Money loaned (Real Estate Mortgage)_____ | |
| 3. Last four digits of any number by which creditor identifies debtor:  XXXXX4155<br>   3a. Debtor may have scheduled account as: Countrywide Home Loans_____ | □ Contributions to an employee benefit plan---11 U.S.C. § 507(a)(5). |
| 4  Secured Claim<br>   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information<br><br>   Nature of property or right of setoff: ☒ Real Estate  □ Motor Vehicle  □ Other<br>   Describe:<br>   Value of Property: _____   Annual interest Rate 4.5%<br><br>   Amount of  arrearage and other charges as of time case filed included in secured claim.<br>   if any $  854.77  Basis for perfection: _Recorded Deed of Trust,_____<br><br>   Amount of Secured Claim: $ 25,751.89*___   Amount Unsecured: $_____ | □ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use---11 U.S.C. § 507(a)(7).<br><br>□ Taxes or penalties owed to governmental units---11 U.S.C. § 507(a)(8). |
| 6.  CREDITS: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | □ Other--Specify applicable paragraph of §11 U.S.C. § 507(a)_____. |
| 7.  DOCUMENTS: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. | Amount entitled to priority:<br>$_____ |
| DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| | |
|---|---|
| Date: 6/9/2009 | FOR COURT USE ONLY |
| Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>/s/<br><br>Alice A. Blanco/Karrollanne K. Cayce/John D. Schlotter/Michael J. McCormick/A. Michelle Hart/Matthew Dyer/Richard H. Siegel/Whitney Groff/Maria Tsagaris/Melissa Sawyers/ Michelle G. Smith Agent for BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P. Its Successors and/or assigns , 1544 Old Alabama Road, Roswell, Georgia 30076, Telephone: 770-643-7200 | |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

IN RE:                                          )
                                                )    CASE NO. 09-53044-RLE
Robert Vernon Ross                              )    CHAPTER 13
Laurie Marie Platero-Ross                       )    JUDGE Roger L. Efremsky
                                                )

## **EXHIBIT A**

### ITEMIZATION OF CLAIM

Total Arrearage  as of 4/23/2009

| | | |
|---|---|---:|
| • | Regular Monthly Installments of $ 132.26 September 2008 | $ 132.26 |
| • | Regular Monthly Installments of $ 128.00 October 2008 | 128.00 |
| • | Regular Monthly Installments of $ 132.26 November 2008 | 132.26 |
| • | Regular Monthly Installments of $ 107.52 December 2008 | 107.52 |
| • | Regular Monthly Installments of $ 111.10 January 2009 | 111.10 |
| • | Regular Monthly Installments of $ 95.49 February 2009 | 95.49 |
| • | Regular Monthly Installments of $ 86.25 March 2009 | 86.25 |
| • | Regular Monthly Installments of $ 95.49 April 2009 through April 2009 | 95.49 |
| • | Late Charges | 6.40 |

                                        TOTAL ARREARAGES          $  894.77

The 5/20/2009 monthly payment amount is $  92.41.

The Interest Rate is: 4.5%

Please forward all payments to BAC Home Loans Servicing, L.P. fka Countrywide Home Loans Servicing, L.P., Bankruptcy Department, Payment Processing PTX-B-209, 7105 Corporate Drive, Plano, TX 75024-1319

Please forward all correspondence and court pleadings to McCALLA RAYMER, LLC, National Bankruptcy Department, 1544 Old Alabama Road, Roswell, Georgia 30076-2102, 770-643-7200. File No. CWF-09-24766, Property Address: 312 South Second Street, Dunsmuir, CA 96025.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

IN RE:                                  )
                                        )    CASE NO. 09-53044-RLE
Robert Vernon Ross                      )    CHAPTER 13
Laurie Marie Platero-Ross               )    JUDGE Roger L. Efremsky
                                        )

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Proof of Claim, has been served by

First Class Mail, postage pre-paid, upon the following parties in interest on the _____27_____ day of

June, 2009

Debtor's Attorney:
Brian M. Kandel, Esq.
1414 Soquel Avenue #203
Santa Cruz, CA 95062

Chapter 13 Trustee:
Devin Derham-Burk
P.O. Box 50013
San Jose, CA 95150-0013

/s/

Alice A. Blanco, Georgia Bar No. 062160
Karrollanne K. Cayce, Georgia Bar No. 428978
John D. Schlotter, Georgia Bar No. 629456
Michael J. McCormick, Georgia Bar No. 485749
A. Michelle Hart, Georgia Bar No. 334291
Matthew Dyer, Georgia Bar No. 236848
Richard H. Siegel, Georgia Bar No. 645825
Whitney Groff, Georgia Bar No. 738079
Maria Tsagaris, Georgia Bar No. 143071
Melissa Sawyers, Georgia Bar No. 142597
Michelle G. Smith, Georgia Bar No. 076232

File No. CWF-09-24766

THIS LAW FIRM IS ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.
ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

# REC. BY MSTC

Siskiyou County Recorder
Leanna Dancer, Recorder

Recording Requested By:
F. YBARRA



000009701  ROSS  R

610  34155  D2  001  001

DOC - 07-0007787
Acct 2-Mt Shasta Title and Escrow
Wednesday, JUN 20, 2007 08:42:36
Ttl Pd    $67.00       Nbr-0000125613
                       RA9/C2/4-14

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
LILLIAN TAN

9743
4 PSP



[Space Above This Line For Recording Data]

2799743                                    6007
[Escrow/Closing #]                        [Doc ID #]

## DEED OF TRUST AND ASSIGNMENT OF RENTS

MI            75-6

This Deed of Trust secures an obligation which calls for payment of interest at a variable interest rate.
THIS DEED OF TRUST is made this 11th            day of JUNE, 2007        , between
ROBERT V ROSS, AND LAURIE M PLATERO-ROSS

whose address is,
225 VISTA DEL MAR DRIVE, WATSONVILLE, CA 95076

herein called "Trustor,"
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02 THOUSAND OAKS, CA 91350 SA, SALINAS, CA
herein called "Trustee," and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS")
a Delaware corporation with an address of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
MERS is the "Beneficiary" under this Deed of Trust and is acting solely as a nominee for
Countrywide Bank, FSB.

("Lender" or "you") and its successors and assigns, with an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314

Trustor irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real
property in the City or Town of DUNSMUIR                        , County of
SISKIYOU                        , State of California, having the street address of
312 S. SECOND STREET, DUNSMUIR, CA 96025

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)(d/l)                    Page 1 of 10



* 2 3 9 9 1 *



DOC ID #: ⬛⬛⬛⬛⬛⬛007

and more specifically described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 030-533-050                                together with all improvements
now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to
the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and
gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the
property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part
of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the
leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property."

    TRUSTOR UNDERSTANDS and agrees that MERS is a separate corporation acting solely as nominee
for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by Trustor
in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and
Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not
limited to, the right to foreclose and sell the Property, and to take any action required of Lender including,
but not limited to, releasing or canceling this Deed of Trust.

1.    THIS DEED OF TRUST SECURES:

    a.    All of the obligations of Trustor in favor of Lender or order under the terms of a revolving
    credit agreement dated JUNE 11, 2007          , herein called Agreement. The Agreement
    provides, among other things, for the payment of all sums advanced by Lender from time to time
    pursuant to the Agreement and for the payment of interest. The maximum principal obligation
    under the Agreement to be secured by this Deed of Trust at any one time is
    TWENTY FIVE THOUSAND and 00/100
    Dollars (\$ 25,000.00        ) unless Lender, with Trustor's written consent, hereafter
    increases this amount. Advances made by Lender to protect the security of this Deed of Trust or to
    preserve the Property shall not be subject to the limitation of the preceding sentence.

    The security of this Deed of Trust shall not be affected by the extension, renewal or modification
    from time to time of the obligations, instruments or agreements described above.

    b.    Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary,
    direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor in
    interest to Trustor) whether created directly or acquired by assignment if the document evidencing
    such obligation or liability or any other writing signed by Trustor (or any successor in interest to
    Trustor) specifically provides that said obligation or liability is secured by this Deed of Trust.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/08)                        Page 2 of 10

c. Performance of each agreement of Trustor herein contained or contained in any other agreement, instrument or other writing to which Trustor is a party if the same is written in connection with any of the foregoing.

d. Payment of all sums to be expended by the Lender or Trustee pursuant to the terms hereof.

2. TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

a. To keep the Property in good condition and repair; not to remove or demolish any building or improvement thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

b. To provide, maintain and deliver to Lender fire and other insurance on the Property satisfactory to and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon indebtedness secured hereby and in such order as Lender may determine, or at option of Lender, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice.

c. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Lender or Trustee may appear, and in any suit brought by Lender to foreclose this Deed of Trust. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

d. To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this trust.

e. That should Trustor fail to make any payment or do any act as herein provided, then Lender or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

(1) Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Lender or Trustee being authorized to enter upon the Property for such purposes.

(2) Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Lender or Trustee.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/08)                      Page 3 of 10

DOC ID #: ▊▊▊▊▊▊▊6007

(3)  Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

(4)  In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

f.  To pay immediately and without demand all sums so expended by Lender or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Lender, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.  To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Lender but not to exceed the maximum allowed by law at the time the statement is demanded.

3.  IT IS FURTHER AGREED THAT:

a.  Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender who may apply or release such monies received by it in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

b.  By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Lender shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Lender holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Lender may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.  Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this Deed of Trust on the remainder of the Property for the full amount of any indebtedness unpaid, Lender and Trustee are respectively empowered as follows:

(1)  Lender may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including Deeds of Trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness.

(2)  Trustee may, at any time, and from time to time, upon the written request of Lender (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this Deed of Trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                    Page 4 of 10

DOC ID #: ▆▆▆▆▆▆5007

d.    Upon (a) written request of Lender or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this Deed of Trust (unless directed in such request to retain them).

e.    Trustor hereby gives to and confers upon Lender the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Lender; provided, however, that Lender hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder. Upon any such default, Lender may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1), above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Lender may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, planting or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby. The entering upon and taking possession of the Property and performance or failure to perform any of the acts described in the preceding sentence, the collection of or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and shall not constitute or otherwise result in any assumption by or liability of Lender for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Lender's gross negligence or intentional torts. Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

f.    Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Lender may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Lender.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/05)                                        Page 5 of 10

g.    Waiver of a right granted to Lender hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Lender may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness affected by any prior declaration or notice of default. The exercise by Lender of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Lender to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Lender or Trustee hereunder.

h.    At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United States of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Lender, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Lender; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Lender shall elect to bring suit to foreclose this Deed of Trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Lender shall be entitled to reasonable attorney's fees and litigation costs.

i.    Lender, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Lender and duly acknowledged and recorded in the office of the recorder of the county or counties where said Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Lender hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new trustee.

j.    This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Lender herein. In this Deed of Trust, whenever the context so requires, the singular number includes the plural.

DOC ID #: ⬛⬛⬛⬛⬛⬛⬛⬛007

k.   Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Lender or Trustee shall be a party unless brought by Trustee.

l.   If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person: (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Lender, at its address designated on the first page of this Deed of Trust; (b) if this Deed of Trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Lender under the Agreement, whether before or after the Property is transferred, shall be secured under this Deed of Trust as if no transfer had occurred except for credit extended by Lender more than five days after it has received the written notices required by this paragraph.

m.   The pleading of any statute of limitations as a defense to any and all obligations secured by this Deed of Trust is hereby waived to the full extent permitted by law.

4.   WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:

a.   As used in this Paragraph 4:

(1)   "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.

(2)   "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance,". "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(l), respectively. The term is intended by Trustor and Lender to be interpreted in its most comprehensive and cumulative sense.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                                      Page 7 of 10

b.   Trustor represents and warrants that except as disclosed to and acknowledged in writing by Lender before the date of this Deed of Trust:

(1)  No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2)  Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3)  Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c.   Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d.   Trustor agrees to permit, or cause any tenant of Trustor to permit, Lender to enter and inspect the Property at any reasonable time for purposes of determining, as Lender deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Lender may obtain affirmative injunctive relief therefor.

e.   Trustor agrees to indemnify and hold Lender and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Lender and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this Deed of Trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in this Deed of Trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this Deed of Trust has been paid and discharged, whether or not this Deed of Trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Lender or of a third party after Trustor's interest in the Property has terminated.

DOC ID #: ▬▬▬▬▬▬6007

f.    The provisions of this Paragraph 4 shall not be affected by the acquisition by Lender or its successors or assigns of any ownership or other interest in the Property beyond Lender's security interest in the Property created under this Deed of Trust, whether or not such acquisition is pursuant to the foreclosure of this Deed of Trust or a merger of the interest of the Lender or its successors and assigns in the Property.

5.    ADDITIONAL PROVISIONS:

a.    The execution of this Deed of Trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists. Rather, execution of this Deed of Trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to the interest granted hereunder.

b.    The execution of this Deed of Trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Lender for any obligation described in Section 1., above. Any personal liability of such person to Lender shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above). Execution of this Deed of Trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to the interest granted hereunder.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                              Page 9 of 10

DOC ID #: ▓▓▓▓▓▓▓▓▓007

The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth below.

By signing below, Trustor agrees to all the terms and conditions of this Deed of Trust.

Mailing Address For Notices

ROBERT V. ROSS
225 VISTA DEL MAR DRIVE
WATSONVILLE, CA 95076

LAURIE M. PLATERO-ROSS
225 VISTA DEL MAR DRIVE
WATSONVILLE, CA 95076

State of California
County of Santa Cruz
On June 13, 2007 , before me Marsha A. Marsano, Notary Public
, personally appeared

Robert V. Ross + Laurie M. Platero-Ross

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

MARSHA A.MARSANO
COMM. # 1710769
Notary Public-California
County of Santa Cruz
My Comm. Exp. Dec. 31, 2010

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)

Page 10 of 10

# SECOND HOME RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
LILLIAN TAN

2799743 ▬▬▬▬▬5007
[Escrow/Closing #]              [Doc ID #]

MULTISTATE SECOND HOME RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT

-365R (0411)    CHL (11/04)(d)         Page 1 of 3                        Initials:
                               VMP Mortgage Solutions, Inc. (800)521-7291     Form 3890 1/01





DOC ID #: ▉▉▉▉▉▉▉▉ 007

THIS SECOND HOME RIDER is made this ELEVENTH                        day of
JUNE, 2007          , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower" whether there are one or more persons undersigned) to secure
Borrower's Note to
Countrywide Bank, FSB.

(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:

312 S. SECOND STREET, DUNSMUIR, CA 96025

[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and
Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and
are replaced by the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application
process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's
knowledge or consent gave materially false, misleading, or inaccurate information or statements
to Lender (or failed to provide Lender with material information) in connection with the Loan.
Material representations include, but are not limited to, representations concerning Borrower's
occupancy of the Property as Borrower's second home.

VMP -365R (0411)   CHL (11/04)          Page 2 of 3          Initials: ▉▉▉▉
                                                                    Form 3890 1/01

DOC ID #: ▓▓▓▓▓▓▓▓▓▓▓▓▓ ░░6007
BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

_____ (Seal)

ROBERT V. ROSS                                            -Borrower

_____ (Seal)

LAURIE M. PLATERO-ROSS                                    -Borrower

_____ (Seal)

                                                          -Borrower

_____ (Seal)

                                                          -Borrower

VMP -365R (0411)  CHL (11/04)          Page 3 of 3                Form 3890 1/01

Prepared by: LILLIAN TAN

♦ • ι ͦ

**Countrywide Bank, FSB.**

Branch #: 0001455
1418 S. MAIN STREET   STE.101
DATE:         06/11/2007                           SALINAS, CA 93908
CASE #:                                            Phone: (831)759-6200
DOC ID #: ◄▬▬▬▬▬▬▬▬007                              Br Fax No.: (831)796-0720
BORROWER: ROBERT V. ROSS
PROPERTY ADDRESS: 312 S. SECOND STREET
                  DUNSMUIR, CA 96025

## LEGAL DESCRIPTION EXHIBIT A

BEGINNING AT A POINT FROM WHICH THE SOUTHWEST CORNER OF BLOCK "S" OF
CHAMPION PARK SECOND ADDITION TO THE TOWN DUNSMUIR, IN THE NORTHEAST
QUARTER OF SECTION 36, TOWNSHIP 39 NORTH, RANGE 4 WEST, M.D.M., BEARS
SOUTH 22 DEGREE 35' WEST, 101.15 FEET, THENCE NORTH 22 DEGREE 35, EAST,
65.0 FEET; THENCE SOUTH 67 DEGREE 25' EAST 115.06 FEET; THENCE SOUTH 22
DEGREE 35' WEST 65.0 FEET ALONG THE WESTERLY LINE OF BLOCK "P" THENCE
NORTH 67 DEGREE 25' WEST, 115.06 FEET TO THE PLACE OF BEGINNING. BEING A
FRACTIONAL PORTION OF LOT 2, BLOCK S OF REVISED MAP OF CHAMPION PARK,
SECOND ADDITION AS RECORDED ON JULY 2, 1948, IN BOOK 1, PAGE 141A, MORE
PARTICULARLY DESCRIBED AS FOLLOWS TO-WIT: A 20 FOOT STRIP OF SAID LAND
ALONG THE WESTERLY LINE OF AFORESAID LOT 2, BLOCK S, MORE PARTICULARLY
DESCRIBED AS FOLLOWS TO-WIT: BEGINNING AT A POINT ON THE WESTERLY LINE OF
SAID BLOCK S AND FROM WHICH THE SOUTHWEST CORNER OF SAID BLOCK 5, BEARS
SOUTH 22 DEGREE 35, WEST 107.42; FEET THENCE SOUTH 67 DEGREE 25, EAST
20.00 FEET; THENCE NORTH 67 DEGREE 25' WEST, 20.00 FEET, THENCE SOUTH 22
DEGREE 35'WEST, 65.0 FEET TO THE PLACE OF BEGINNINT.  APN No: 030-533-050

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)





Prepared by: LILLIAN TAN

**Countrywide Bank, FSB.**

*Certified to be a copy of the original Countrywide Home Loans*

DATE:          06/11/2007
BORROWER: ROBERT V. ROSS
CASE #:
LOAN #:          4155
PROPERTY ADDRESS: 312 S. SECOND STREET
                             DUNSMUIR, CA 96025

Branch #: 0001455
1418 S. MAIN STREET   STE.101
SALINAS, CA 93908
Phone: (831)752-6200
Br Fax No.: (831)796-0720

## HOME EQUITY CREDIT LINE AGREEMENT AND DISCLOSURE STATEMENT

Date: 06/11/2007

This Home Equity Credit Line Agreement and Disclosure Statement ("Agreement") governs my Home Equity Credit Line Account ("Account") with you,
Countrywide Bank, FSB.
The words "I," "me" and "my" refer to the Borrower signing this Agreement. If more than one Borrower signs this Agreement, the words "I," "me" and "my" refer to all who sign, separately and together. The words "you" and "your" refer to
Countrywide Bank, FSB.

**1. LOANS: DRAW AND REPAYMENT PERIOD.** Subject to the limitations explained in this Agreement, upon my request for loans, you agree to lend money to me from time to time until the last day of the sixtieth (60th) consecutive calendar month following the date set forth above ("Initial Draw Period") or until the last day of any renewed Draw Period, up to my Credit Limit indicated in paragraph 5 below. (You will not make any loans if my Account is sooner terminated or suspended under paragraphs 12.B, 12.D, 13.B or 17 below.) You will not make any loan before the fourth (4th) business day following the signing of this Agreement, except to the extent that the proceeds of this loan are for the purchase of the Property.

I agree that prior to the end of the Initial Draw Period, you have the right to review my Account to decide whether such Initial Draw Period will be renewed. Unless you have sent me written notice not later than the sixtieth (60th) day before the Initial Draw Period ends that you have decided not to renew such Initial Draw Period, such Initial Draw Period will automatically renew for one additional sixty (60) month period, and the Draw Period on my Account shall thereafter be considered to be 120 months for purposes of this Agreement. If the Initial Draw Period is not renewed, then the Draw Period on my Account shall thereafter be considered to be 60 months for purposes of this Agreement.

After the Draw Period ends, I will no longer be able to obtain loans and then must pay the outstanding balance over the specified Repayment Period unless my Account is sooner terminated under paragraph 13.B below, in which case my Account is due and payable in full at the time of such termination. The Repayment Period shall be 180 months.

**2. MAKING LOANS.** You will make loans under this Agreement (up to my Available Credit Limit) by (i) honoring Equity Credit Line Checks you provide to me requesting advances of at least $250; (ii) if you issue an access card ("Card"); by honoring advances I request by using the Card at any Merchant or servicer provider ("Merchant") or any participating automated teller ("ATM") networks; (iii) paying closing costs and finance charges in accordance with paragraph 8.C below; (iv) paying certain other amounts on my behalf in accordance with my disbursement authorization provided to you at or before the time I sign this Agreement; (v) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Mortgage; or (vi) any other method or procedure you establish.

**3. SPECIAL CARD TERMS AND CONDITIONS.** I understand that you, in your sole discretion and at your sole option, may cause to be issued a Card, as an access device and an additional means by which I may obtain advances under the Account. By applying for the Account, I have requested that you issue the Card to me if my application is approved and if you, at your option and in your sole discretion, provide access to my/our Account.by the Card after the Account is opened. If one or more Cards are issued to me as a means of obtaining loan advances on my Account, I agree that my use of the Card and any related loan advances will be governed by the following terms and conditions **unless I cancel my card within [30] days of receiving the Card and have not authorized the use of the Card or Card account number.** I also agree to comply with any agreement between me and the Card Issuer:

A. <u>Account Access.</u> In addition to any means by which I may access my Account as described in the Agreement, I may be permitted to obtain (up to my Available Credit Limit) loan advances by using any Card you provide, at any merchant or service provider ("Merchant") that allows me to use the Card to pay for goods or services. If you provide me with a Personal Identification Number ("PIN"), I may also obtain loan advances by using the Card at participating automated teller machine ("ATM") networks. I agree not to write my PIN on my Card(s) or disclose it to others. If I use

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (11/06)(d/i)

Page 1 of 11

LOAN # 155

my Card at an ATM, I understand that the owner of the ATM may charge me a fee for the transaction. I understand that in order to use my Card at an ATM, I must call 1-800-669-5864 to request a PIN. I also understand that Card loan advances (whether at a Merchant or ATM) may be subject to transactional limits that could restrict the full use of my Available Credit Limit. There are no minimum draw requirements that apply when I use the Card, except for any limits that may be imposed separately by a Merchant or ATM owner. I agree that if you decide in your sole discretion to approve any transactions above my Available Credit Limit, I will be responsible for the full amount of any such advances. I understand that if I make reservations or purchases of any kind using my Card, my Account may be immediately charged for the full amount of the reservation or purchase, regardless of whether I have received the goods or services requested at the time my Account is charged.

B. Liability. I agree that all borrowers who have executed the Agreement are jointly and severally liable under the terms of the Agreement for any Card transactions that are posted to the Account, whether or not a Card has been issued to all borrowers.

C. Authorizations. All Card transactions are processed through the applicable bankcard networks that are branded on the Card ("Bankcard Networks") according to the requirements and procedures of the Bankcard Networks. Some Card transactions may require prior authorization by you or pursuant to the requirements and procedures of the Bankcard Networks before they are approved for processing. The Bankcard Networks may refuse to process any Card transaction if it appears to be illegal or fraudulent, or if the Merchant or the transaction does not otherwise meet the requirements of the Bankcard Networks. In addition, you or the Card Issuer may deny authorization for any Card transaction if my Account has been suspended or terminated. I also agree that if you or the Card Issuer detects any suspicious or unusual use, you or the Card Issuer may suspend use of any Card.

D. Lawful Transactions. I agree to use my Card only for valid and lawful purposes. If I use my Card for any other purpose or transaction (herein called a "Prohibited Activity"), including, without limitation, gambling activities, I agree to promptly reimburse you, the Card Issuer (if other than you) and the Bankcard Networks for all amounts or expenses paid by any such party as a result of such use. You reserve the right to block any Prohibited Activity and/or to not approve any authorization request for a Prohibited Activity. Card transactions for any Prohibited Activity made by me or for my benefit shall be considered authorized by me. You will not be liable if I engage in any Prohibited Activity using the Card, and I will be responsible for the full amount of any loan advances made in connection with such Prohibited Activity. Display by an online merchant of the service mark of any Bankcard Network branded on the Card does not mean that a Card transaction over the Internet is legal where I reside.

E. Transactions With Merchants. I understand and agree that: (1) If a Merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", "all sales final", or similar language, I will be bound by that policy when I use my Card to pay for goods or services from that Merchant; (2) When using my Card to make travel or lodging reservations, I must obtain the Merchant's cancellation policy and follow it if I cancel the reservations. If I cancel, I must obtain the cancellation number that the Merchant is required to give me pursuant to the requirements and procedures of the Bankcard Networks. The Merchant may charge me for a cancelled transaction unless I can provide you with a correct cancellation number. (3) If I authorize a Merchant to charge repeat transactions to my Account without my presenting my Card for each charge, then I must notify the Merchant when I want to discontinue the repeat transactions or if my Account is suspended or closed. Otherwise, I will be responsible to you for the amount of all such repeat transactions. I understand that if my loan advance privileges or my use of the Card is suspended or cancelled for any reason, it is my responsibility to pay for such repeat transactions directly until loan advance privileges and/or Card use are reinstated. (4) If I disagree with any transaction on my monthly statement or have a dispute with any Merchant as a result of a Card transaction, I agree to comply with the section entitled MY BILLING RIGHTS — I SHOULD KEEP THIS NOTICE FOR FUTURE USE in my Agreement. I will promptly provide you with such information or assistance as you reasonably request.

F. Foreign Transactions. I agree to pay you in U.S. dollars. If I make a Card transaction in a foreign currency, the appropriate Bankcard Network will convert the transaction amount into U.S. dollars at the rates, and in accordance with its operating regulations in effect at the time the transaction is processed. Currently, the regulations of the Bankcard Networks provide that the currency conversion rate to be used is either a wholesale market rate selected by the Bankcard Networks or a government-mandated rate, each in effect one day prior to the processing date, plus an adjustment factor (currently 1%) established by the Bankcard Networks. The Bankcard Networks may change the currency conversion rate, and the formula used to establish that rate, from time to time. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the transaction occurred. I understand that you do not determine the currency conversion rate or the formula to establish the rate that is used by the Bankcard Networks and that you do not receive any portion of the currency conversion rate used by the Bankcard Networks.

G. Limitation of Liability. Your liability to me, if any, for wrongful dishonor of any loan request I make using my Card is limited to my actual damages. I also agree that you are not responsible if any transaction is not approved, whether by you, a Merchant, Bankcard Network, or a third party, even if I have sufficient credit available.

LOAN #: ████████155

H. Termination/Suspension of Account. Upon any termination or cancellation of my Account by you or by me, or any suspension of my loan advance privileges under the Agreement, I agree that all Cards will be destroyed by me upon your instruction, or may be retrieved by you or your agent.

I. Cancellation/Expiration of Cards. I may be permitted to use the Card to access my account only so long as the access card program remains active and you permit me to participate in the program. If more than one person has executed the Agreement, any one of us may request that our Cards be cancelled. The request, at your option, may be made verbally or in writing. You may also cancel any Card at your sole discretion at any time, including if (1) the contracts with current or future providers of services used to operate the Card program expire or are terminated; or (2) I have not used my Card to obtain a loan advance on my Account at least once during any 12 month period; (3) my card is lost, stolen, or otherwise subject to unauthorized use; or (4) any part of the Program, including use of the Card, is prohibited by applicable law. I understand and agree that the terms governing my ability to obtain loan advances during the Initial Draw Period and any renewed Draw Period are set forth in the Agreement and that those terms supercede any inconsistent expiration date(s) printed on any Cards that are issued to me to the extent that such expiration date(s) is (are) later than the expiration date of any Draw period defined in the Agreement.

J. Lost or Stolen Cards. I agree to promptly notify you at 1-800-556-5678 if any Card is lost or stolen, or if I suspect unauthorized use. You reserve the right not to honor any loan advance request made using a Card if any of my Cards has been cancelled or reported lost or stolen.

K. Unauthorized Transactions. I will not be liable for the unauthorized use of my Card. I agree to assist you in your investigation of any claims of unauthorized Card transactions and understand that I may be required to provide you with a written statement and/or an Affidavit of Forgery. I agree that if I permit a person to use the Card or Card account number, or if I benefit from another person's use of the Card or Card account number, such use is not unauthorized use of the Card, even if I did not intend to be responsible for such use.

L. Special Rule for Card Purchases. The following is in addition to the notice at the end of the Agreement entitled MY BILLING RIGHTS – I SHOULD KEEP THIS NOTICE FOR FUTURE USE:

**Special Rule for Card Purchases.**

If I have a problem with the quality of property or services that I purchased with my Card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

- (a)  I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

- (b)  The purchase price must have been more than $50. These limitations do not apply if you or the Card Issuer own or operate the merchant, or if you or the Card Issuer mailed me the advertisement for the property or services.

## 4. PROMISE TO PAY; MINIMUM PAYMENT; METHOD OF PAYMENT.

A. I promise to pay to your order, when and as due, all loans made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges I owe to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so such payments will be credited as of the day of receipt.

B. At a minimum, you will send me a periodic statement at the end of each billing cycle in which there is a debit or credit balance of more than one dollar ($1.00) or in which a finance charge has been imposed. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance," my Annual Percentage Rate, the amount of my "Minimum Payment Due," my "Payment Due Date" and the place and manner of making payments.

C. I may pay all or any part of my "New Balance" at any time, subject to an Account Termination Fee or Low Balance Fee **FINANCE CHARGE**, as applicable, as described in paragraphs 8.D and 7.B(6), respectively. As periodic finance charges will accrue on my Account balance until it is fully repaid, any periodic finance charges incurred for the billing cycle in which full payment of the New Balance shown on the previous periodic statement is received by you will be reflected on my next periodic statement. If I want to include those finance charges with the payment of the New Balance shown on my previous periodic statement, I will contact
Countrywide Bank, FSB.
P.O. Box 10287, Van Nuys, CA 91419-0287
for details concerning the amount I must include.

D. Unless you terminate my Account and require immediate payment of the entire outstanding balance as provided in paragraph 13.B below, I must pay you at least the "Minimum Payment Due" for each billing cycle by the "Payment Due Date" shown on my periodic statement.

CCNV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (11/06)                                    Page 3  of 11

LOAN #: ████████0155

E. During the Draw Period, my "Minimum Payment Due" equals all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due." My "Minimum Payment Due" during the Draw Period will not reduce the principal balance that is outstanding on my account.

F. During the Repayment Period, if the Draw Period on my Account is 60 months or 120 months, my "Minimum Payment Due" equals 1/180th of the outstanding principal balance of my Account as of the last day of the Draw Period plus all unpaid finance charges, credit life insurance premiums and other charges imposed during the billing cycle together with any "Amount Past Due."

**5. CREDIT LIMIT.** My Credit Limit under this Agreement is $ 25,000.00 . I promise not to request a loan which will cause the unpaid principal balance of my Account to exceed my Credit Limit. You can increase the Credit Limit at any time without prior notice to me. You can refuse to make loans that cause my obligations under this Agreement to exceed my Credit Limit. You will make loans on my Account based on the "Available Credit Limit" shown on my most recent periodic statement. However, I agree that when I make payments on my Account by check or other non-cash method, you reserve the right to make loans based on the "Available Credit Limit" shown on the last periodic statement issued prior to the most recent periodic statement. In addition to each "Minimum Payment Due," I must pay immediately, without notice or demand from you, any part of the principal balance of my Account that exceeds my Credit Limit.

## 6. ANNUAL PERCENTAGE RATE.

[   ] A. The initial Daily Periodic Rate is N/A %. The initial **ANNUAL PERCENTAGE RATE** is N/A %. These rates are "discounted" rates. This means that these rates are lower than the rates that would be in effect if the formula set forth in paragraph 6.C below had been used, in which event the initial Daily Periodic Rate would be N/A % and the initial **ANNUAL PERCENTAGE RATE** would be N/A %. These discounted rates will be in effect from the date of this Agreement until N/A . Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 6.C below.

[X] B. The initial Daily Periodic Rate is 0.02603 % and the initial **ANNUAL PERCENTAGE RATE** is 9.500 %. These rates are not discounted.

C. My Annual Percentage Rate and Daily Periodic Rate may increase or decrease (the first day after my "discounted" rate has expired, if applicable) according to the following procedure: The **ANNUAL PERCENTAGE RATE** shall be the "Index" plus a "Margin." The "Index" will be the highest Prime Rate as published in the "Money Rates" table of *The Wall Street Journal* as of the first business day of the calendar month. The "Margin" is equal to the number of percentage points disclosed in paragraph 6.D below. Each billing cycle will end on the last day of the calendar month. Any new Index value shall be effective as of the first day of the billing cycle in which such new Index value is established.

Upon a change in the Index, any resulting change in my Daily Periodic Rate and Annual Percentage Rate will take effect without prior notice to me, and will apply to new loans and to the outstanding principal balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid principal balance and all new loans I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the **ANNUAL PERCENTAGE RATE** divided by 365.

D. The "Margin" to be used under paragraph 6.C above to determine my **ANNUAL PERCENTAGE RATE** is 1.250 %.

E. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The **ANNUAL PERCENTAGE RATE** will never increase above 18.000 % or the maximum rate permitted by law, whichever is less.

F. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay additional periodic finance charges and, as a result, I will have to pay larger "Minimum Payments."

**7. FINANCE CHARGE.** I agree to pay a finance charge on my Account as explained below.

### A. Periodic **FINANCE CHARGE.**

(1) A loan represented by an Equity Credit Line Check will be posted to my Account on the date that such a check is presented to you for payment. Any loan advance represented by a Card transaction will be posted to my Account as of the date that you receive the transaction for processing. The periodic finance charge begins to accrue on my Account from the time a loan is posted to my Account. There is no grace period during which I can repay loan advances without incurring a periodic finance charge.

LOAN #: ▮▮▮▮155

(2) You compute the periodic finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" in my Account (including current transactions). To determine the periodic finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To get the "Average Daily Balance," you take the beginning principal balance of my Account each day, add any new loans and subtract any principal payments or credits. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide by the total number of days in the billing cycle. This gives you the "Average Daily Balance."

B. Other **FINANCE CHARGES.**

(1) Points **FINANCE CHARGE.**

I agree to pay a Points **FINANCE CHARGE** of $ 0.00                        at the time I sign this Agreement.

| | |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

(2) Broker Fee **FINANCE CHARGES.**

I agree to pay Broker Fee **FINANCE CHARGES** of $ N/A                        at the time I sign this Agreement.

| | |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

(3) Settlement Agent **FINANCE CHARGES.**

I agree to pay the following Settlement Agent **FINANCE CHARGES** at the time I sign this Agreement:

| | |
|---|---|
| Attorney's Fee | $ _____ |
| Electronic document download | $ _____50.00 |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

(4) Miscellaneous **FINANCE CHARGES.**

I agree to pay the following miscellaneous **FINANCE CHARGES** at the time I sign this Agreement:

| | |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

(5) Annual Maintenance Fee **FINANCE CHARGE.**

[X] I agree to pay an annual maintenance fee **FINANCE CHARGE** of $ 75.00                        which you will charge to my Account on the first anniversary of this Agreement and every anniversary date thereafter, whether or not I have used or continue to use my Account; except that such fee shall be waived for the entire term of this Agreement if I meet both of the following conditions: (a) I maintain an average outstanding daily balance which does not fall below $ 20,000.00        from the date of this Agreement through the first anniversary of this Agreement; and (b) I make each monthly payment during that period on or before the due date for each such payment. You will not rebate any portion of the annual fee if my Account is terminated or suspended before the end of any annual period.

[ ] I will not be charged an annual maintenance fee **FINANCE CHARGE** on this loan.

(6) Low Balance Fee **FINANCE CHARGE.**

[ ] In consideration of having an Account with a reduced Margin, I agree to maintain an Average Daily Balance of $40,000 in each monthly billing cycle during the first two (2) years of my Account. I further agree to pay a Low

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (11/08)                        Page 5 of 11

Balance Fee **FINANCE CHARGE** of $40 for each monthly billing cycle during the first two (2) years of my Account in which I fail to maintain an Average Daily Balance of $40,000. You will not charge me this fee for the month in which you charge me an Account Termination Fee pursuant to the terms of paragraph 8.D.

**8. OTHER CHARGES.**

A. I agree to pay each of the charges listed below, which shall constitute additional indebtedness under this agreement. Any charges assessed will be shown on my periodic statement for the billing cycle in which such charge is assessed:

(1) If I fail to make my "Minimum Payment Due" within   FIFTEEN   days of the "Payment Due Date," I agree to pay a late fee of 5% of the late payment or $5.00, whichever is greater.

(2) I agree to pay a Return-Item Fee of $15 for each check you receive in payment of my Account which is returned unpaid upon second presentment.

B. I agree to pay you or my broker the following closing costs at or before the time I sign this Agreement:

| | |
|---|---:|
| Title Insurance | $ 100.00 |
| Recording | $ 100.00 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| LESS Amounts Paid by Lender | $ 0.00 |
| Total Paid by Borrower | $ 250.00 |

C. I may elect to pay the closing costs described in paragraph 8.B above and the finance charges described in paragraph 7.B above in cash or by check at or before the time I sign this Agreement or I may elect to finance some or all of such costs and finance charges by allowing you to make a loan under my Account to pay some or all of such costs and finance charges.

D. ☒ If I pay in full and terminate my Account with you on or before the fifth (5th) anniversary of this Agreement, I agree to pay an Account Termination Fee of the lesser of $350 or an amount not to exceed six months interest, at the interest rate then in effect on the Account, on the amount prepaid, to the extent that the prepaid amount exceeds 20% of my original Credit Limit.

☐ I will not be charged an Account Termination Fee on this loan.

E. I agree to pay a Demand Statement Fee of $ 30.00   for furnishing a statement of the amount necessary to pay in full the debt evidenced by this Agreement. I agree to pay this fee upon payment in full of the Account.

F. I agree to pay a Reconveyance Preparation Fee of $ 45.00   for delivering a full reconveyance of the deed of trust securing the debt evidenced by this Agreement.

G. I agree to pay a Recording Fee to reimburse you for the actual cost imposed by the appropriate governmental office to record a full reconveyance of the deed of trust securing the debt evidenced by this Agreement, which is not to exceed $100.00.

**9. PROPERTY SECURITY.** To secure the payment of all loans I obtain and the performance of all promises I make in this Agreement, I and all co-owners are giving you a Deed of Trust (the "Deed of Trust") covering my dwelling located at
312 S. SECOND STREET, DUNSMUIR, CA 96025
(the "Property"). The Deed of Trust is security for my current and future obligations under this Agreement. I will continue to be obligated to make payment to you under this Agreement even if the Property is damaged or

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (11/08)                              Page 8 of 11

LOAN # ████████4255

destroyed and whether or not any insurance proceeds are available.

## 10. SECTION INTENTIONALLY OMITTED.

**11. PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Property, in such amounts, against such risks (including, but not limited to, flood damage insurance required by law), and according to such terms as you may require in the Deed of Trust or otherwise. I may obtain property insurance from any company of my choice that is acceptable to you. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

## 12. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOANS OR REDUCE MY CREDIT LIMIT.

A. You may take the actions listed in paragraph 12.B below during the period that any of the following events or conditions occur:

(1) the value of the Property declines significantly below its appraised value for the purposes of my Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Account due to a material change in my financial circumstances, such as the filing of a bankruptcy petition by or against me;

(3) I am in default of any material obligation of this Agreement, such as my important obligations listed in paragraph 14 below;

(4) government action (such as enactment of a state usury law) prevents you from imposing the Annual Percentage Rate provided for in this Agreement;

(5) government action (such as imposition of a tax lien) impairs the priority of the lien of the Deed of Trust such that the value of the lien of the Deed of Trust is less than 120% of my Credit Limit;

(6) the maximum Annual Percentage Rate set forth in paragraph 6.E above is reached.

(7) The creditor is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

B. During the period in which a condition described in paragraph 12.A above occurs, you may refuse to make any additional loans or reduce my Credit Limit or do both. You will mail or deliver written notice to me after you suspend my Account or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my credit privileges when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 12.A above or 13.A below have occurred.

C. Before reinstating my right to obtain loans, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and you may require me to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my loans or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of the Deed of Trust is not impaired.

D. If more than one Borrower signs this Agreement and any such Borrower requests that you cease making loans, you may comply with such a request. All Borrowers who have signed this Agreement must join in any request to reinstate the loans for such request to be effective. If all such persons subsequently request reinstatement of the loans, you must honor such a request unless a condition listed in paragraph 12.A above or 13.A below has occurred.

E. If an event or condition described in paragraph 12.A above occurs which is also an event or condition described in paragraph 13.A below, your rights and remedies described under paragraph 13.B below apply and supercede your rights described in this paragraph 12.

## 13. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.

A. You may take the actions listed in paragraph 13.B below if any of the following events or conditions occur:

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any Minimum Payment Due to you on or before the Payment Due Date;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Deed of Trust;

(3) I sell or transfer title to the Property without first obtaining your written permission (also, see paragraph 19.N below);

(4) I fail to maintain insurance on the Property as required under this Agreement or the Deed of Trust;

(5) I act or fail to act and as a result a lien senior to the lien of the Deed of Trust is filed against the Property;

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (11/06)                                    Page 7 of 11

LOAN #: ●●●●●●0155

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Property is taken through eminent domain, condemnation or similar government taking;

(8) A prior lienholder on the Property begins foreclosure under its security document;

(9) The Property is used for an illegal purpose which could subject the Property to seizure;

(10) I fail to pay taxes on the Property; or

(11) My action or inaction adversely affects the Real Property or your rights in the Property. Such action or inaction could include, for example, the following:

    (a) A judgment is filed against me;

    (b) I commit waste or otherwise destructively use or fail to maintain the Property;

    (c) I die and I am survived by another person obligated as a Borrower under this Agreement; or

    (d) I move out of the Property.

B. If an event described in paragraph 13.A above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate any of my rights under my Account;

(2) you may temporarily or permanently refuse to make any additional loans;

(3) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(4) you may foreclose the Deed of Trust;

(5) you may reduce my Credit Limit; and

(6) you may take any other action permitted by this Agreement, by law or in equity.

**14. SALE OF PREMISES:** I will not sell, transfer ownership of, mortgage, or otherwise dispose of my interest in the Premises, in whole or in part, or permit any other lien or claim against the Premises, or transfer possession, whether by lease, rental, or otherwise, or discontinue to use the Premises as my primary and/or personal residence without your prior written consent.

**15. MY IMPORTANT OBLIGATIONS. I agree that:**

A. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me.

B. I will not permit any person or entity to levy upon, attach, garnish or otherwise take any money, account or other property in your possession that belongs to me.

C. From time to time, if requested, I will supply you with current financial information about me.

D. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Deed of Trust.

E. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Property.

F. I will not use or allow use of the Property for any illegal purpose.

G. I will not move out of the Property.

H. I will not permit a lien to be filed which takes priority over the Deed of Trust for future advances made under this Agreement.

I. I will not break any promise made in this Agreement or in the Deed of Trust such as;

    (1) my promise not to exceed my Credit Limit; and

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (11/06)                                                                 Page 8 of 11

(2)  my "Important Obligations" listed in the Deed of Trust.

**16. COSTS OF COLLECTION.** Subject to any limits of applicable law, I must pay for your reasonable and actual costs of collection, or foreclosure such as your court costs and reasonable attorney's or trustee's fees. Periodic finance charges will continue to accrue at the rates provided in this Agreement before and after I default and before and after you obtain a judgment against me.

**17. MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOANS.**

A. Termination by Me. I may terminate my right to obtain loans by sending you a written notice which will become effective upon receipt by you. If more than one person signs this Agreement as Borrower, my right to obtain loans may be terminated by written notice pursuant to this paragraph 17.A signed by any one or more of such persons. I may also suspend my right to obtain loans pursuant to paragraph 12.D above.

B. Termination by You. My right to future advances under my Account will terminate at the end of the Draw Period or any renewed Draw Period if not sooner upon your exercise of your termination or suspension rights under paragraphs 12.B or 13.B above or my exercise of my suspension or termination rights under paragraphs 12.D or 17.A above.

C. Effect of Termination. Upon termination or suspension of my Account, whether by you or by me, I must continue to pay the "Minimum Payment Due" on or before my "Payment Due Dates" until all amounts owed to you under this Agreement are paid in full. However, I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 13.B above. I must return unused Equity Credit Line Checks to you upon termination. I may be required to pay an Account Termination Fee pursuant to paragraph 8.D above.

**18. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1)  if the original Index is no longer available, you may change the Index and Margin;

(2)  you may make any change I agree to in writing;

(3)  you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loans; and

(4)  you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the date the Minimum Payment is due, the day of the month on which Index values are measured to determine my rate, your rounding rules and the balance computation method.

B. If required by applicable law, you will mail me notice of such a change before the effective date of the change. The change will be effective as to any existing unpaid balance and as to any future transactions under this Agreement.

**19. OTHER PROVISIONS.**

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's obligations under this Agreement. My rights under this Agreement belong only to me. I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Deed of Trust at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Property and the Deed of Trust as you may deem necessary from time to time. I will cooperate in having the Property reappraised.

C. Tax Deductibility. I know that I should consult a tax adviser regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the Property is located.

E. Application of Payments. You may apply payments and proceeds of the Property in such order as you shall deem advisable or as otherwise required by applicable law.

LOAN #: ●●●●●●155

F. <u>Failure to Perform</u>. If I violate or fail to perform any term or condition of this Agreement (or the Deed of Trust), you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid principal of my Account and finance charges will be figured at the rates described above. I agree to pay these costs and finance charges on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

G. <u>Waiver of Jury Trial</u>. I waive my right to a jury trial.

H. <u>Complete Understanding of the Parties</u>. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

I. <u>Waiver of Notice</u>. I waive presentment, demand, protest, notice of default, nonpayment, partial payments and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except those notices that are required by federal Regulation Z.

J. <u>Meaning of Words</u>. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

K. <u>Payment Marked "Payment in Full"</u>. I agree not to submit any checks to you in payment of my Account marked "Payment in Full" or similar wording unless the amount of the check is equal to the total amount then owing on my Account. If I do submit a check to you marked "Payment in Full" or similar wording for a sum less than the total amount then owing on my Account, you may accept it in partial payment of my Account but will not be bound by the "Payment in Full" or similar notation. **Communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to** Countrywide Bank, FSB.
P.O. Box 5170, Simi Valley, CA 93062-5170

L. <u>Enforcement</u>. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement and still exercise your rights at a later time.

M. <u>Notices</u>. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular first class mail, addressed to me at my last address appearing on your records or at such other address as I may designate by written notice to you as provided in this paragraph 19.M and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by certified mail, return receipt requested, at Countrywide Bank, FSB.
P.O. Box 5170, Simi Valley, CA 93062-5170
or to such other address as you may designate by written notice to me as provided in this paragraph 19.M.

N. <u>Sale or Transfer of Property</u>. I understand that one of the provisions of the Deed of Trust states: "Upon default by Trustor [the owner(s) of the Property] in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Beneficiary [you] may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Beneficiary."

O. <u>Riders/Addenda</u>. The covenants and agreements of each of the riders/addenda checked below are incorporated into and supplement and amend the terms of this Agreement.

☐ No Cost Addendum
☐ _____ Addendum
☒ Billing Rights Statement

☐ _____ Rider
_____

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (11/06)                        Page 10 of 11

LOAN #: ████████155

BY SIGNING BELOW, (1) I AGREE THAT I HAVE READ ALL PAGES OF THIS AGREEMENT INCLUDING ANY RIDERS/ADDENDA, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, INCLUDING ANY TERMS AND CONDITIONS LISTED IN ANY RIDERS/ADDENDA, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT AND ANY RIDERS/ADDENDA. I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "IMPORTANT TERMS OF OUR HOME EQUITY LINE OF CREDIT", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE" AND TWO COPIES OF THE HOME EQUITY LINE OF CREDIT NOTICE OF RIGHT TO CANCEL.

_____  6-13-07
Borrower: ROBERT V. ROSS                  Date

_____  6-13-07
Borrower: LAURIE M. PLATERO-ROSS          Date

_____
Borrower:                                 Date

_____
Borrower:                                 Date

CONV
● HELOC - CA Agreement & Disclosure Statement
2C481-CA (11/06)                    Page 11 of 11

# EXHIBIT C



**Bank of America**

**Home Loans**

C3_8236 CONFLTR 16343 05/23/2013

*Customer Service Department, CA6-919-01-41*
*PO Box 5170*
*Simi Valley, CA 93062-5170*

| | |
|---|---|
| **Notice Date:** | February 10, 2014 |
| **Loan No:** | 168834155 |

Robert V Ross & Laurie M Platero-Ross
1808 46th Ave
Capitola, CA 95010

**Property Address:**
312 S. Second Street
Dunsmuir, CA 96025

---

**YOUR CREDIT REPORTING REQUEST**

Your request to update information submitted by Bank of America, N.A. to the credit reporting agencies regarding the above referenced loan was received.

We've completed your request and the following credit report adjustment was submitted to the three main credit reporting agencies:

Credit report adjustment to update as discharged through chapter 13 with zero balance due.

The adjustment request was submitted on 2/10/2014 to the following agencies:

| | | |
|---|---|---|
| Equifax | equifax.com | 800.685.1111 |
| Experian | experian.com | 888.397.3742 |
| TransUnion | transunion.com | 800.916.8800 |

It may take up to 60 days for the credit reporting agencies to complete the credit adjustment and update their records. If your credit report remains unchanged after 60 days, please contact the agencies directly and provide them with a copy of this letter using the contact information listed above.

---

**QUESTIONS?**

If you have any questions, please call us at (800) 669-5864, Monday-Friday 7a.m. to 7p.m. Local Time. We're pleased to serve your home loan needs.

This communication is from Bank of America, N.A., the servicer of your home loan.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector.

Please write your account number on all correspondence.